UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUDY P. A.,<br><br>             Plaintiff,<br><br>       v.<br><br>KILOLO KIJAKAZI,[1]<br>Acting Commissioner of Social Security,<br>             Defendant. | Case No.  CV 20-00986-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.    INTRODUCTION

Plaintiff Rudy P. A.[2] ("Plaintiff") challenges the Commissioner's denial of his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons stated below, the decision of the Commissioner is AFFIRMED.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi, the Acting Commissioner of Social Security, is hereby substituted as the defendant.

[2] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## II. SUMMARY OF PROCEEDINGS

On August 26, 2016 and May 15, 2017, respectively, Plaintiff applied for DIB and SSI alleging disability beginning August 6, 2016, due to schizophrenia, nausea, bipolar, anxiety, nerve damage (hands and elbows), and depression. (Administrative Record ("AR") 20, 197-206, 212-15, 220.) His applications were denied on February 14, 2017, and upon reconsideration on May 8, 2017. (AR 20, 94-114.) On June 11, 2017, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"), and a hearing was held on March 4, 2019. (AR 33-54, 129-30.) Plaintiff, represented by counsel, appeared and testified, along with an impartial vocational expert. (AR 33-54.) On March 19, 2019, the ALJ found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[3] from August 6, 2016 through the date of the decision. (AR 27.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-7.) Plaintiff filed this action on May 7, 2020. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 6, 2016, the alleged onset date. (AR 22.) At **step two**, the ALJ found that Plaintiff has the medically determinable impairments of left foot bunion and schizoaffective disorder, bipolar type I, but he does not have a severe impairment or combination of impairments because his impairments do not significantly limit his ability to perform basic work-related activities for 12 consecutive months. (AR 22.) Accordingly, the ALJ found that Plaintiff "has not been under a disability . . . from August 6, 2016, through the date of this decision." (AR 27.)

---

[3] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

2

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, —U.S. —, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins v. Social Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

///

## IV. DISCUSSION

Plaintiff's sole contention is that the ALJ's finding that his mental impairment was not severe at step two of the five-step sequential evaluation process is not supported by substantial evidence. (Joint Stipulation ("JS") at 3-9.) The Commissioner argues that the ALJ's finding that Plaintiff's mental impairment was not severe is supported by substantial evidence. (JS at 9-13.) For the reasons below, the Court affirms.

### A. Applicable Legal Standards

The step two inquiry is meant to be a *de minimis* screening device. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)). At step two, the ALJ identifies a claimant's severe impairments, *i.e.*, impairments that significantly limit his or her ability to do basic work activities.[4] 20 C.F.R. §§ 404.1522(a), 416.922(a); *Smolen*, 80 F.3d at 1290. A determination that an impairment is not severe requires evaluation of medical findings describing the impairment, and an informed judgment as to its limiting effects on a claimant's ability to do basic work activities. Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *4 (Jan. 1, 1985).[5] If a claimant does not have a severe mental impairment, then he or she is not eligible for disability payments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

The ALJ must take into account subjective symptoms in assessing severity, *Smolen*, 80 F.3d at 1290, but "medical evidence alone is evaluated . . . to assess the effects of the impairment(s) on ability to do basic work activities." SSR 85-28 at *4. An impairment or combination thereof may properly be found not severe if the clearly established objective medical evidence shows only slight abnormalities that minimally affect a claimant's ability to do basic work activities. *Webb v. Barnhart*,

---

[4] Basic work activities are "the abilities and aptitudes necessary to do most jobs[.]" 20 C.F.R. §§ 404.1522(b), 416.922(b).

[5] SSRs do not have the force of law, but a reviewing court generally accords them some deference. *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001).

433 F.3d 683, 687 (9th Cir. 2005); *Smolen*, 80 F.3d at 1290.

A "special technique" is used to evaluate the severity of mental impairments. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Generally, a mental impairment is not severe if the degree of limitation in the four functional areas of understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself is rated as "none" or "mild." *See* 20 C.F.R. §§ 404.1520a(c)(3) & (d)(1), 416.920a(c)(3) & (d)(1).

**B.     The ALJ's Decision**

At step two, the ALJ found that Plaintiff's medically determinable mental impairment of schizoaffective disorder, bipolar type I did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities for 12 consecutive months, and was, therefore, nonsevere. (AR 22, 25.)

The ALJ considered the entire medical record and all of Plaintiff's subjective complaints and testimony. (AR 23-27.) The ALJ noted that Plaintiff asserted that his mental impairment of schizoaffective disorder, bipolar type I caused anxiety; auditory hallucinations; depression; paranoia; difficulty in interacting with others and maintaining concentration, persistence, and pace; and lack of motivation. (AR 23.) First, the ALJ found that Plaintiff's subjective statements were not entirely consistent with the medical evidence and other evidence in the record. (AR 24.) Specifically, the ALJ found that Plaintiff's daily activities of going to the store with his wife and transporting his children to and from school were inconsistent with his allegation that auditory hallucinations, paranoia, anxiety, and impaired thought process and thought content impaired his ability to adapt and manage himself. (AR 24.)

Second, the ALJ found that Plaintiff's subjective statements regarding hallucinations, paranoia and depression that reduced his ability to perform work were inconsistent with the "minimal and unremarkable" objective medical evidence. (AR 24, 326-27.) For example, in August 2016, Plaintiff's mental status examination indicated mostly normal findings, including orientation, although he did have

5

abnormal thought process, delusions, and tactile (but not auditory) hallucinations. (AR 25, 313-14.) Plaintiff was noted as "actively smok[ing] marijuana." (AR 25, 313.) In September 2016, Plaintiff's mental status examination showed intact memory, judgment and insight, normal mood and affect, normal speech, and normal rate and tone. (AR 24-25, 326.) Plaintiff's November 2016 medical records indicate that Plaintiff denied audio hallucinations, paranoia, and suicidal and homicidal ideation. (AR 24-25, 339.) Plaintiff reported in January 2017 that he felt stable and he quit his job as a tree climber because he had difficulty showing up on time, not because of any mental or physical impairment. (AR 25, 343.) In 2018, he reported doing "good" most of the time, with no medication side effects. (AR 25, 367, 376.)

Third, the ALJ found that Plaintiff's subjective statements were inconsistent with the frequency and extent of treatment sought by Plaintiff. (AR 24.) Plaintiff saw a psychiatrist in 2016, but his visits were irregular and sporadic. (AR 24, 310-22.) Plaintiff's medical records total 85 pages, which includes treatment for his physical impairments, with no psychiatric hospitalizations. (AR 24, 309-93.)

Fourth, the ALJ found Plaintiff's subjective statements inconsistent with the ALJ's personal observations of Plaintiff at the hearing. (AR 24.) The ALJ noted Plaintiff was shaking throughout the hearing, but found Plaintiff's "evidence of record supports or explains [Plaintiff's] shaking at the hearing." (AR 24.)

The ALJ considered the four broad areas of mental functioning and found that Plaintiff had mild limitations in all four areas. (AR 25-26.) The ALJ noted the absence of significant positive findings or evidence sufficient to establish that Plaintiff's abilities in the four functional areas were fairly limited. (AR 25-26, 313, 326, 343, 367, 376.)

The ALJ gave great weight to the State Agency psychological consultants' assessments that Plaintiff did not have a severe mental impairment. (AR 27, 95-104, 106-14.) The ALJ found that the assessments were consistent with the other evidence of record as a whole, including the medical evidence demonstrating Plaintiff's

persistent symptoms remained generally stable at no worse than a mild level with appropriate conservative treatment and the absence of more significant positive objective clinical or diagnostic findings pertaining to a mental impairment. (AR 27, 313-14, 326, 339.)

### C. Discussion

The overall treatment record supports the ALJ's finding at step two. Plaintiff presents a different interpretation of the objective medical evidence, treatment, and diagnosis. (JS at 5-7.) Plaintiff argues that he complained of depression, anxiety, overwhelming stress and paranoia; a mental status examination revealed rambling speech, tactile hallucinations, loose and disorganized thought process, paranoid thought content, fair insight, and fair judgment; his medication was increased; he was diagnosed with unspecified mood disorder and schizoaffective disorder, bipolar type; and he had good days and bad days. (JS at 5-7.) He argues that he received consistent monthly treatment by a psychiatrist since 2016. (JS at 7.) He argues that the medical evidence belies the ALJ's findings, particularly with respect to bipolar disorder, "which a reasonable person understands has periods of stability versus periods of no stability." (JS at 5, 7.) While Plaintiff's interpretation of the evidence is not unreasonable, neither is the ALJ's interpretation. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). The ALJ gave specific examples of the "minimal and unremarkable" objective evidence, citing mental status examinations and treatment records. (AR 24-27.) The ALJ noted the irregular and sporadic psychiatric visits in 2016, which was a reasonable interpretation of the evidence showing a psychiatric assessment on August 9, 2016, and medication visits on August 23, 2016, October 6, 2016 and November 29, 2016, indicating a similar medication treatment regimen since 2012. (AR 24, 111, 310-22, 360.) Likewise, although Plaintiff sought monthly treatment in 2017 and 2018 from Inland Psychiatric Medical Group, the ALJ could reasonably find that the progress notes did

not support Plaintiff's subjective statements. (AR 24, 309-93.) Further, mere diagnosis of an impairment, or even treatment for it, is insufficient to establish severity at step two, especially when the objective medical evidence in the record fails to show any work-related limitations connected to the impairment. *See Harvey v. Colvin*, 2013 WL 3899282, at *5 (C.D. Cal. July 29, 2013) (citing *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993)); *see also Febach v. Colvin*, 580 F. App'x 530, 531 (9th Cir. 2014) ("[D]iagnosis alone is insufficient for finding a 'severe' impairment, as required by the social security regulations."). Substantial evidence supports the ALJ's step two finding.

Plaintiff argues that the State Agency assessments were made without the benefit of the entire medical record and thus were not based on a complete medical assumption. (JS at 8.) To the extent Plaintiff contends that the ALJ erred in assigning great weight to the State Agency assessments because the State Agency consultants did not review "the entire medical record," his contention is rejected. The ALJ reviewed the entire record, specifically discussed evidence that post-dated the State Agency assessments, and concluded that the later evidence was consistent with the medical evidence as a whole showing no objective evidence of a severe mental impairment. (AR 22, 25, 367, 376.) *See Sportsman v. Colvin*, 637 F. App'x 992, 995 (9th Cir. 2016) (stating that it is not error for a state agency consultant to fail to review subsequent medical records, if the ALJ reviews the entire record and concludes that the later-dated medical records are consistent with the overall medical evidence); *see also Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020) ("[A]lthough the non-examining state agency physicians did not review any evidence beyond August 2014, the ALJ did not err in giving great weight to the physicians' opinions."). Further, Plaintiff has not identified any later mental health evidence that would have likely changed the State Agency assessments or ALJ's decision. *See Morin v. Saul*, 840 F. App'x 77, 79 (9th Cir. 2020) ("While the state agency consultants did not review evidence that post-dated their reports, [plaintiff] has not

shown that this process resulted in any harmful error, especially as the ALJ had the opportunity to review the entire record.") (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015)).

To the extent Plaintiff argues that the ALJ failed to fully and fairly develop the record, his argument fails. "[T]he ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *Laura G. v. Berryhill*, 357 F. Supp. 3d 1023, 1029 (C.D. Cal. 2019). "The ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation." *Mayes*, 276 F.3d at 459. Here, there is no indication that there was any ambiguity or that the record was inadequate, and Plaintiff does not point to any ambiguity or inadequacy, but instead merely argues that the ALJ should have further developed the record "[i]f the ALJ had an issue with the inconsistencies or the periods of improvements." (JS at 8-9.) Because the medical evidence regarding Plaintiff's impairments is neither ambiguous nor inadequate, the ALJ had no duty to develop the record further.

For the foregoing reasons, remand is not warranted.

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 12, 2021         /s/
                                                    ROZELLA A. OLIVER
                                                    UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**